Layn R. Phillips (to be admitted *pro hac vice*)
Bruce A. Wessel (to be admitted *pro hac vice*)
Melissa R. McCormick (to be admitted *pro hac vice*)
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
(949) 760-0991

-and-

Shawn Patrick Regan (SR-0925)
Thomas G. Slater (to be admitted *pro hac vice*)
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166-0136
(212) 309-1000
sregan@hunton.com

*Attorneys for Plaintiff*
*WILLIAM I. KOCH*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM I. KOCH, an individual;  :

      Plaintiff,  :

         vs.  :

HARDY RODENSTOCK, aka Meinhard Goerke,  :
an individual,

      Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

06 CV 6586

JUDGE JONES

06 Civ. _____

## COMPLAINT

Plaintiff William I. Koch alleges, on personal knowledge as to himself, and on

information and belief as to Defendant Hardy Rodenstock, aka Meinhard Goerke:

## PRELIMINARY STATEMENT

1.    This case concerns an ongoing scheme to defraud wine collectors that has been orchestrated by Hardy Rodenstock, aka Meinhard Goerke, a citizen of Germany.  For decades, Rodenstock has been involved in the tasting and promotion of rare vintages of wine.  Having built a reputation as a wine connoisseur, Rodenstock periodically claims to have discovered rare vintages of wine.  At least some of these discoveries are forgeries.  Plaintiff William I. Koch is one of Rodenstock's many victims.

2.    Rodenstock frequents wine tastings where very old vintages of wine are tasted. He has attended wine tastings in New York, where he once met Plaintiff Koch.  Rodenstock is charming and debonair.  He is also a con artist.  Witnessing the high prices of rare vintages of wine, Rodenstock decided to enter the business of creating fake bottles of wine.

3.    Plaintiff's investigation has proven that Rodenstock's most celebrated wine "discovery" – 18th century wine purportedly bottled for Thomas Jefferson, complete with the "Th.J." initials engraved on the bottles – is a hoax.

4.    Rodenstock initially claimed to have discovered this "Thomas Jefferson wine" in the mid-1980s in an old walled-up wine cellar in Paris.  He has never disclosed the exact location of this cellar or the exact circumstances of the discovery.  Recently, Rodenstock has modified his story, now claiming that he bought the bottles of Thomas Jefferson wine from an unidentified person in Paris who may no longer be alive.

5.    Because Rodenstock intended to defraud sophisticated wine purchasers, his Thomas Jefferson wine story had many indicia of authenticity.  The bottles were very old, consistent with bottles from the 1700s, and the bottles were engraved with the initials "Th.J." Jefferson lived in Paris in the late-1700s when he was the United States Minister to France and

he was an avid wine collector. Historical records confirm that Jefferson purchased hundreds of bottles of French wine while he was in France and after he returned to the United States. Thus, it was credible that Thomas Jefferson wine from the 1780s might be discovered in Paris.

6.     On or about December 5, 1985, Forbes Management Co. Inc. purchased one bottle of Thomas Jefferson wine at an auction at Christie's. Forbes Management Co. Inc. paid £105,000 (approximately $156,000), the highest price ever paid for a single bottle of wine at auction. In connection with that auction, Christie's experts corroborated the authenticity of the provenance. Plaintiff Koch subsequently purchased four bottles of the Thomas Jefferson wine.

7.     Experts in engraving who have recently analyzed many of the bottles of Thomas Jefferson wine have concluded that the initials "Th.J.," and other markings on the bottle, were engraved using engraving tools that did not exist in the 1700s.

8.     Additionally, Thomas Jefferson experts at Monticello do not believe that Rodenstock's Thomas Jefferson wine bottles are genuine. There is no historical evidence that Jefferson ever engraved initials of any kind on bottles of wine; moreover, Jefferson's records, which are highly detailed and list all or almost all of his expenditures, do not reflect that Jefferson ever bought bottles of certain vintages Rodenstock claims to have found in Paris.

9.     Rodenstock to this day contends that the Thomas Jefferson wine is "absolutely genuine and that anyone who drinks it is drinking history!"

10.     Rodenstock is also the source of counterfeit bottles of 1921 Petrus Magnum, one of which was purchased by Plaintiff. Plaintiff brings this suit to prove that Rodenstock has injected forgeries into international commerce and to obtain appropriate remedies against him, including damages.

## PARTIES

11.    Plaintiff William Koch is a resident of the state of Florida.

12.    Defendant Hardy Rodenstock is a resident of the country of Germany. Rodenstock's real name is Meinhard Goerke.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over the state law claim under 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 and is between a citizen of a state and a citizen of a foreign state. This Court has jurisdiction over the federal declaratory judgment claim pursuant to 28 U.S.C. § 1332 and 28 U.S.C. §§ 2201 and 2202.

14.    Venue is proper in this Court under 28 U.S.C. § 1391. Rodenstock has transacted business in this district, events giving rise to the claims occurred in this district, and Rodenstock is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

15.    In late 1985, Christie's in London offered a bottle of 1787 Lafite wine at auction that was advertised in a manner suggesting that the wine had been bottled for, sold to, or owned by Thomas Jefferson. The Christie's catalogue stated:  "Th.J. are the initials of Thomas Jefferson one of the most splendid men of American history . . . Jefferson's purchases of Bordeaux wines are well documented . . . ." The initials "Th.J." were engraved on the bottle along with "1787" and "Lafitte."  Rodenstock was seller of the wine, having consigned it to Christie's for auction.

16.    According to the Christie's catalogue for the "Finest and Rarest Wines" auction held Thursday December 5, 1985, the 1787 Lafite bottle of wine offered for sale was "The Property of Mr. Hardy Rodenstock."  There were many indicia of authenticity detailed in the

4

Christie's catalogue, including: "Th.J. are the initials of Thomas Jefferson," a statement that

Jefferson lived in France from May 1784 to October 1789, and a statement that, in 1787,

Jefferson toured the wine regions of southern France. The Christie's catalogue also stated that

one side of the bottle "has been cleaned to reveal the original wheel engraved script figures and

letters '1787 Lafitte Th.J.'"

17.    Rodenstock told Christie's prior to the auction that this bottle of wine, and others

like it, had been discovered in a walled-up wine cellar in Paris. The Christie's catalogue reported

that Rodenstock had organized two tastings of bottles of the wine in 1985 before the Christie's

auction. The Christie's catalogue stated that "connoisseurs," including Michael Broadbent, then

the head of Christie's Wine Department, had tasted the wine. The catalogue reported that

Broadbent deemed the wine "perfect in every sense: colour, bouquet and taste." Broadbent has

on multiple occasions vouched for the authenticity of the Thomas Jefferson wine.

18.    Rodenstock became an international celebrity because of his discovery of the

Thomas Jefferson wine. His status as a wine celebrity continues to this day. In Christie's Fine

and Rare Wines catalogue for a June 3, 2006 auction at 20 Rockefeller Plaza in New York,

Christie's invokes Rodenstock's name. A 1994 Chateau Lafite-Rothschild is described as: "Last

tasted in a 'flight' of first growth '94s at the Rodenstock wine event, March 2001." A 1995

Chateau Haut-Brion is described as, "An equal top mark at Rodenstock's blind tasting of first

growth '95s." Similarly, Christie's invokes Rodenstock's name in its catalogue for the June 15,

2006 London Finest and Rarest Wines and Spirits auction, including an 1864 Chateau Lafite-

Rothschild (referring to a Rodenstock tasting in 1995) and a 1900 Chateau Lafite-Rothschild

("Last tasted [at] Hardy Rodenstock's wine weekend, Sept. 1996."). Rodenstock's tastings are a

5

central part of his scheme, as the tastings allow him to assess market demand and potential customers for his "discoveries."

19.     Forbes Management Co. Inc. paid £105,000 (approximately $156,000) for the Rodenstock bottle of Thomas Jefferson wine in December of 1985. This was reportedly the highest price ever paid for a bottle of wine. A representative of Forbes Management Co. Inc. hand-carried the wine directly from London to New York, where the bottle has been displayed as part of The Forbes Collection in New York.

20.     Relying on the statements made by Christie's in connection with the auction, statements that were based on information provided to Christie's by Rodenstock, Plaintiff Koch decided to purchase bottles of the Thomas Jefferson wine. He first purchased a bottle of Rodenstock's Thomas Jefferson wine from the Chicago Wine Company in November 1988, understanding at the time of that purchase that the wine was found at the same walled-up cellar location in Paris as the Thomas Jefferson wine auctioned by Christie's. Rodenstock was the source of the wine sold to Plaintiff Koch by the Chicago Wine Company.

21.     In December 1988, Plaintiff Koch purchased three bottles of Thomas Jefferson wine from Farr Vintners, Ltd. Rodenstock provided these three bottles to Farr Vintners for sale to Plaintiff Koch. The three bottles were a 1787 Lafite, a 1784 Lafite, and a 1784 Ch. Branne Mouton. Lindsay Hamilton of Farr Vintners, Ltd. personally hand-delivered these three bottles of wine to Plaintiff Koch in New York. At the time of purchase, Plaintiff Koch was led to believe that these three bottles were found in the same walled-up wine cellar where the 1787 Lafite that was sold at the 1985 Christie's auction was found. Rodenstock has confirmed that he provided these three bottles of wine to Farr Vintners and has also stated that these bottles were discovered in the same cellar where he found the "Th.J." bottle sold at Christie's in December

6

1985. Plaintiff Koch reasonably believed that these bottles of wine had been owned by or bottled for Thomas Jefferson based on representations by Rodenstock that were repeated by Christie's and others in the wine marketplace in and around December 5, 1985.

22.     During 2005, Plaintiff Koch was asked to display one of his bottles of Thomas Jefferson wine at a museum in Boston. In preparing for the exhibit, Plaintiff Koch's staff and Plaintiff Koch learned for the first time that there were credible questions about the authenticity of the bottles of Thomas Jefferson wine. Plaintiff Koch then commenced an investigation to determine whether the bottles of Thomas Jefferson wine he had purchased were authentic.

23.     A central finding of Plaintiff Koch's investigation is that the "Th.J." initials on the bottle were engraved by an electric power tool or tools with a flexible shaft that did not exist in the 1700s. Plaintiff believes that Rodenstock engraved the initials on the bottle himself, or directed someone else to do so. The tools that were used to do the engraving did not exist at that time. Plaintiff's experts also examined several other bottles of Thomas Jefferson wine and reached the same conclusion: The engravings on the other bottles of Thomas Jefferson wine were not made by any tool that existed in the 1700s. The tool used for the engravings was not invented until much later.

24.     The engraving tools that existed in the 1700s were spinning copper wheels, natural stone wheels, and some ferrous wheels. These wheels were powered by foot pedal. During the engraving process, the wheels would rotate in a single position and the bottle would be moved by the engraver. The engravings on the Thomas Jefferson bottles are not consistent with this technique. Instead, the engravings on these bottles, according to engraving experts, were made by an electric power tool with a flexible shaft, such as a dentist's drill, that could be

moved during the engraving process while the bottle was held in a stationary position. Such tools did not exist in the 1700s.

25.     In January 2006, Plaintiff Koch sent a facsimile to Rodenstock from a Koch family residence in New York. Plaintiff Koch concluded his letter: "Mr. Rodenstock could you please send a brief letter and authenticate the facts that the above bottles of wine, sold through Farr Vintners, with the engraved initials Th J, were acquired by you or your agents from a walled-up cellar near Paris and that you have every reason to believe that the above bottles of wine once belonged to Thomas Jefferson."

26.     Later that month, Rodenstock responded to Plaintiff Koch by facsimile sent to Plaintiff Koch at a Koch family residence in New York and stated: "[F]or me the Jefferson bottles are absolutely genuine and – as you rightly wrote – come from a walled-up cellar in Paris. * * * * Only after the experts from Christie's have established that the bottle was absolutely genuine, it has been included in the auction."

27.     In May 2006, in response to another letter from Plaintiff Koch, Rodenstock changed his story regarding his discovery of the Thomas Jefferson wine bottles, and claimed that he "bought these bottles 21 years ago in Paris from people who had offered them to me." Rodenstock refused to identify the people from whom he allegedly had purchased the bottles, and he further claimed that these people might now be dead. Rodenstock asserted that Christie's had "the engraving, the glass and so on closely examined. So why should I doubt about the genuineness?" He reiterated that "the [Jefferson] wine was absolutely genuine." True and correct copies of correspondence between Plaintiff Koch and Rodenstock are attached as Exhibits 1-4.

28.     Rodenstock's statements in his 2006 letters about the genuineness of the Thomas

Jefferson wine are part of his continuing scheme to conceal the truth that the Thomas Jefferson

wine bottles are forgeries.

29.     In early 2006, a research report prepared by Lucia Goodwin was made public in a

book by James Gabler.  That report was entitled "RESEARCH REPORT:  Chateau Lafite 1787,

with initials 'Th.J.' prepared by Lucia Goodwin, 12 Dec. 1985."  The report raised questions

about the authenticity of the wine bottles Rodenstock had "discovered."  Goodwin was, at the

time she wrote the report, director of research at Monticello.  Plaintiff Koch was able to obtain a

copy of the report in 2005, shortly before publication of the book.  Prior to that, Plaintiff Koch

did not know about Goodwin's report.

30.     Goodwin's report identifies both Rodenstock and Christie's wine department head

Michael Broadbent as "men of unquestioned knowledge and integrity."  But Goodwin's report

questions the authenticity of the wine bottles Rodenstock had "discovered" for several reasons:

- Jefferson's highly detailed financial records, which include daily receipts and
  expenditures and are considered by historians to be complete and accurate, do not show a
  purchase of this wine.

- Most of Jefferson's wine orders appear in four different places in his records:  letters,
  letter record, memorandum book, and miscellaneous accounts.  Chateau Lafite, which is
  the vintner associated with some of the purported Thomas Jefferson bottles, does not
  appear in these records.

- None of Jefferson's records show anything related to the vintages of the bottles
  Rodenstock claims to have found, with the exception of a 1784 Chateau d'Yquem, which
  is known to have been delivered to Jefferson.

- If the bottles were a gift to Jefferson, he would have received them before he left Paris. He left Paris in 1789, too early for the 1787 vintage to have been bottled.

- None of the Jefferson wine bottles at Monticello is engraved and there is no historical evidence that Jefferson ever asked for wine bottles to be engraved.

31.    The Goodwin report also questions the initials engraved on the bottles, stating: "The form 'Th:J,' with a colon between the two parts, was the shortened form of his signature in correspondence.  Thus the 'Th.J.' on the bottles [using a period and not a colon] does not quite fit any of the forms used or specified by Jefferson."

32.    It was not until March 2005 that Plaintiff Koch learned of Monticello's questions about the authenticity of Rodenstock's "discovery."  It was then that Plaintiff Koch began a detailed investigation of Rodenstock's activities and the Thomas Jefferson wine in particular. That investigation has concluded that the Thomas Jefferson wine bottles are not authentic and that Rodenstock appears to have been involved, and is currently involved, in other efforts to peddle forged bottles of old wine, including his alleged discovery of long-lost bottles of wine in Russia and Venezuela, as well as other bottles of rare and antique wine purchased by Plaintiff Koch and others.

33.    As part of Plaintiff Koch's investigation, Plaintiff Koch asked Forbes Management Co. Inc. to permit the investigators to inspect the bottle owned by Forbes Management Co. Inc.  Forbes Management Co. Inc. agreed.  Like the other bottles of Thomas Jefferson wine, the engraving experts have concluded that the Forbes Management Co. Inc. bottle is also not authentic.

34.   Plaintiff Koch's experts have analyzed another two bottles of Rodenstock's Thomas Jefferson wine – bottles that Rodenstock donated to Chateau d'Yquem – and reached the same conclusion that they are fake.

35.   On October 28, 2005 Plaintiff purchased a 1921 Petrus Magnum from Zachys in New York for $33,150.  1921 Petrus is expensive because it is known as an exceptional vintage. In a February 1996 issue of the <u>Wine Advocate</u>, Robert Parker gave the 1921 Petrus a 100 point rating.  He wrote that the 1921 Petrus "was, to state it mildly, out of this universe."  He explained that "1921 was one of those extremely hot Bordeaux growing seasons . . . . Because of high alcohol, low acidity, and a certain fragility to the wines, the vintage has always been considered to be very great . . . ."  According to his article, Parker first tasted the 1921 Petrus at a 1995 tasting conducted in Munich, Germany by Hardy Rodenstock.

36.   Because of the cost of this bottle of Petrus, and because research showed a link to Rodenstock, Plaintiff's investigators took this bottle to Chateau Petrus in France for inspection by experts in 2006.  These experts concluded that the 1921 Petrus was a very impressive fake made by a master forger of wine.  In particular, while Petrus was bottling wine in 1921, there is no historical evidence that it bottled magnums in that year.  In addition, the cork was too long and the metal cap and label on the wine appear to have been artificially aged.

37.   Other collectors of old wine are eager to have 1921 Petrus as part of their collection because of its reputation as one of the great wines in all of history.  A collector other than Koch has recently learned that his 1921 Petrus Magnum, like Koch's, is counterfeit.  This collector purchased a 1921 Petrus Magnum from The Wine Library in Petaluma, California. Independent experts have confirmed that this 1921 Petrus also is not authentic.  The collector has

been told that the source of many of the counterfeit bottles sold to him by The Wine Library was Hardy Rodenstock.

38.     Hardy Rodenstock, having witnessed the high prices being paid for 1921 Petrus, created counterfeit bottles of 1921 Petrus and injected them into the international wine markets, enriching Rodenstock and defrauding consumers.

## FIRST CAUSE OF ACTION

### (COMMON LAW FRAUD)

39.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 38 of this Complaint as though set forth in full herein.

40.     Rodenstock made material misrepresentations to, or concealed or suppressed material facts from, Plaintiff, third parties, and a class of individual wine purchasers of which Plaintiff is a member.

41.     The omissions or representations by Rodenstock were material and were false and misleading, and Rodenstock knew they were material and were false and misleading at the time they were made.

42.     Rodenstock misrepresented, concealed, or suppressed these facts with the intent to influence the actions of Plaintiff, or the actions of the class of individuals of which Plaintiff is a member, including intending to influence purchases of the old wine sold by Rodenstock.

43.     Given the unique position of Rodenstock, Plaintiff reasonably and justifiably relied on Rodenstock's misrepresentations.

44.     At the time Plaintiff acted, Plaintiff was unaware of the concealed or suppressed facts and would have acted differently if Plaintiff had known the true facts.

45.     Plaintiff has suffered damages as a result in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### (DECLARATORY RELIEF)

46.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 45 of this Complaint as though set forth in full herein.

47.    Rodenstock has on numerous occasions affirmatively maintained, directly to Plaintiff Koch and to others that the Thomas Jefferson wine bottles sold by Rodenstock are authentic. Rodenstock continues to represent that the wine is authentic to this day.

48.    Plaintiff has only recently discovered that this wine is a forgery and not authentic.

49.    An actual case or controversy has arisen between Plaintiff and Rodenstock regarding the authenticity of this wine. A judicial declaration is necessary and appropriate.

50.    Plaintiff requests that the Court declare that the Rodenstock wine is not authentic and that Rodenstock created the wine to make the bottles appear authentic in order to defraud Plaintiff and others like him.

**WHEREFORE**, having set forth their claims, Plaintiff prays for judgment in his favor as follows:

a.    That all issues of fact be tried to a jury;

b.    A declaration that the Rodenstock Thomas Jefferson wine is counterfeit;

c.    Damages for all injuries suffered as a result of Rodenstock's unlawful conduct;

d.    An accounting and restitution in an amount to be determined at trial;

e.    Exemplary damages in an amount to be determined at trial;

f.    Pre-judgment interest in an amount to be determined at trial; and

g.    Such other and further relief as may be just and proper.

Dated: New York, New York
       August 31, 2006

BY: _____

Shawn Patrick Regan (SR-0925)
Thomas G. Slater (to be admitted *pro hac vice*)
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166-0136
(212) 309-1000
sregan@hunton.com

-and-

Layn R. Phillips (to be admitted *pro hac vice*)
Bruce A. Wessel (to be admitted *pro hac vice*)
Melissa R. McCormick (to be admitted *pro hac vice*)
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
(949) 760-0991

*Attorneys for Plaintiff*
*WILLIAM I. KOCH*

# Exhibit 1

TO:        Mr. Hardy Rodenstock        Fax:   011-49-899305512

FROM:      Bill Koch                   Fax:   212-754-2199

SUBJECT:   Th J Wine                   DATE: January 3, 2006

Dear Mr. Rodenstock,

I believe I met you in the year 2000 at a Latour tasting Christy's held in New York.

I recently displayed some of my art, antique guns and wine at the Boston Museum of Fine Arts. When I was preparing to display some of my prize bottles of wine, I discovered I was very short on authentication. I had some research conducted and determined that I purchased four bottles of wine all engraved with the initials Th J as follows: Ch Branne Mouton 1784, Ch Lafite 1784, Ch Lafite 1787 and Ch Branne Mouton 1787. These bottles were purchased by me from Farr Vintners in London in 1988.

I contacted Farr Vintners and determined that they obtained the bottles from you and they relied on research done by Michael Broadbent. However Mr. Broadbent could not authenticate the actual origin of the bottles. Mr. Broadbent explained that these bottles were located by you in a walled up cellar near Paris. You are the only person that can authenticate these bottles of Jefferson wine.

Mr. Rodenstock could you please send me a brief letter and authenticate the fact that the above bottles of wine, sold through Farr Vintners, with the engraved initials Th J, were acquired by you or your agents from a walled up cellar near Paris and that you have every reason to believe that the above bottles of wine once belonged to Thomas Jefferson.

Thanks for your help.

William I. Koch

# Exhibit 2

01/13/2006  13:15     5616408740                OXBOW CORP                          PAGE  02/13
10/01 '06 DI  17:15 FAX +49 89 9305512                                              @004

**Hardy Rodenstock**
**Fax number : ...49-89-9305512**

January 10 2006

Mr.
William I. Koch
Fax number : 001-212-7542199

Thank you very much for your yesterday's fax.

I have answered all the questions of Mr. Stanley C. Los from the SUMMIT Research Group on that subject in detail by fax dated September 5. I suppose that Mr. Stanley has delivered my fax and all the documents to you.

I would like to point out once again that for me the Jefferson bottles are absolutely genuine and – as you wrote rightly – come from a walled up cellar in Paris.

Michael Broadbent has made extensive investigations before he had included a bottle 1787 Lafitte in the CHRISTIE'S auction in December 1985.
Thomas Jefferson's correspondence clearly shows that he has ordered and also drunk the wines.
It also clearly indicates that the wines he has ordered for him were to be marked with "Th.J." and those for George Washington with "G.W.". All that can be read in the book "Jefferson and Wine".

Michael Broadbent has had the glass and the engraving examined by experts from CHRISTIE'S and they have confirmed that the glass, the type and the engraving clearly comes from the period between 1780 and 1800.

Only after the experts from CHRISTIE'S have established that the bottle was absolutely genuine, it has been included in the auction.

As you know, there were then some doubts about the genuineness of the bottles. I therefore have decided to put one bottle at the disposal for scientific purposes.

To prove that also the wine was genuine, I have asked CHRISTIE'S to find the best experts in the world, and Michael Broadbent has given me the name of Prof. Dr. Bonani in Zurich and Pr. Dr. Hall in Oxford.

At the day of examination in the "Swiss Federal Institute of Technology Zurich" Prof. Dr. Bonani, Michael Broadbent, a lawyer and notary from Zurich and I were present.
Michael Broadbent has cut off the sealing wax from the bottle, pulled out the cork and poured some wine into a glass. We all have smelt and tasted the wine.

A small quantity of the wine and a piece of the cork have then been sent by Pr. Dr. Bonani to his colleague Pr. Dr. Hall in Oxford.

Both have conducted their scientific examinations completely independent of each other. You will find the results enclosed.

The result was definite. The wine was absolutely genuine and the examinations have also shown that no younger wine has been added after 1962. A very important point was also that the cork has been examined. They have found out that the wine corresponded with the cork and that it was the original cork that has been bathed by the wine during 200 years.

I have again put a bottle 1787 Ch. d'Yquem Th.J. at the disposal for scientific examinations in 1994 and also these examinations have proved that the wine was absolutely genuine and that the cork has always been bathed by the wine.

You will surely understand that the discussions on the genuineness of the Jefferson bottles were herewith closed for me.

As you wrote rightly, we have met each other at the fantastic Latour tasting in New York.

I would be glad to meet you again over a good glass of wine.

On this, I remain with kind regards

- Hardy Rodenstock -

PS : I have heard that you have bought many fantastic wines at the spectacular ZACHY'S auction. Congratulations !

01/13/2006  13:15    5616408740          OXBOW CORP                    PAGE  06/13
11/01 '06 MI  14:52 FAX +49 89 9303512                                ☒001



| ETH | Eidgenössische Technische Hochschule Zürich | Ecole polytechnique fédérale de Zurich Politecnico federale di Zurigo Swiss Federal Institute of Technology Zurich |

**Institut für Mittelenergiephysik**

Dr. G. Bonani

Durchwahl-Nr. 01/377 2043   Telex: 823 153 ehpk ch                    2508
Zentrale:      01/377 4411   FAX: 01/371 2665
                                          Herrn
                                          Hardy RODENSTOCK

Postadresse:
Institut für Mittelenergiephysik
ETH-Hönggerberg
CH-8093 Zürich

Zürich, den   7. Dezember 1992

Sehr geehrter Herr Rodenstock,

Hiermit erhalten Sie die Resultate der Proben, die am 27.8.1992 zur $^{14}$C-AMS Datierung überbracht wurden:

| Labor Nr. | Proben Nr. | AMS-$^{14}$C Alter [% MOD] | | $\delta$ $^{13}$C [o/oo] | | kalib. Alter [BC-AD] | |
|---|---|---|---|---|---|---|---|
| ETH-9529 | 1962 WINE | 139.2 ± | 0.5 | -22.0 ± | 1.5 | AD | 1962 |
| ETH-9530 | 1955 WINE | 102.4 ± | 0.3 | -27.0 ± | 0.9 | AD | 1955 |
| ETH-9531-2 | 1787 SED. | 100.3 ± | 0.5 | -23.6 ± | 0.9 | AD | 1950 |

| Labor Nr. | Proben Nr. | AMS-$^{14}$C Alter [y BP] | | $\delta$ $^{13}$C [o/oo] | | kalib. Alter [BC-AD] | |
|---|---|---|---|---|---|---|---|
| ETH-9531-1 | 1787 WINE | 120 ± | 35 | -19.9 ± | 0.9 | AD | 1673 -1756 (33.7 %) |
|  |  |  |  |  |  | AD | 1796 -1945 (66.0 %) |
|  |  |  |  |  |  | AD | 1953 - 1954 ( 0.3 %) |
| ETH-9534 | 1787 CORK | 90 ± | 35 | -24.9 ± | 0.7 | AD | 1684 -1739 (27.3 %) |
|  |  |  |  |  |  | AD | 1806 -1932 (72.7 %) |

Die oben angegebenen Alter sind für die natürliche Isotopenfraktionierung korrigiert und sind entweder in % Modern (obere Tabelle) oder in y BP (Jahre before present), wobei das Bezugsjahr das Jahr 1950 ist.

Die kalibrierten (dendrokorrigierten) Alter sind $2\sigma$-Bereiche (95 % confidence limit) und
wurden mit dem Programm CalibETH von Th.R. Niklaus, G. Bonani, M. Simonius, M.
Suter und W. Wölfli berechnet (Radiocarbon, Vol. 34, No. 3, 1992, p.-). Die Kali-
brierkurve der letzten 300 Jahre hat einen sehr unruhigen Verlauf, so dass für diese
Zeitperiode keine genauen Alter ermittelt werden können.

Die durchgeführten Radiokarbon-Untersuchungen an dem 1787er Lafitte zeigen keine
Beimischung von jüngerem Wein nach 1962. Die ermittelten Alter des Weines und des
dazugehörenden Korken stimmen innerhalb der Messfehler überein.

Mit freundlichen Grüssen

Dr. Georges Bonani

R:

2

# Exhibit 3

### PERSONAL FAX FROM THE DESK OF WILLIAM I. KOCH

TO:       Hardy Rodenstock        FAX:  011-49-899305512

FROM:   William I. Koch            FAX:  561-640-8740

DATE:    April 10, 2006

Dear Mr. Rodenstock,

You have always responded to inquiries from me and researchers working on my behalf, a fact I appreciate. As you know, we have done a great deal of research with an eye to authenticating my Thomas Jefferson wines. The information that you only possess, as the person who discovered these wines, is critical to this research.

I would appreciate a favor. I would like to personally meet with you, over a good glass of wine, at a place of your choosing to discuss our research into the authentication of the wines, and some of the concerns that have arisen.

If you would kindly agree to this meeting, I would set aside time from my schedule to make it happen under circumstances convenient to you. A short exchange of information face-to-face will accomplish more than a number of faxes and telephone calls. I hope you will agree to accommodate me.

Very truly yours,

Bill Koch

# Exhibit 4

**Hardy Rodenstock**
**Fax : ...49-89-9305512**


Mr.
William L Koch

May 11 2006




Thank you for your fax.

I have already answered you all the questions you have asked me concerning the Jefferson bottles in detail.

I have bought these bottles 21 years ago in Paris from people who had offered them to me. For me the matter is settled. From a legal point of view the purchase and the sale are barred by the statute of limitation.

The person from whom I have bought the bottles at the time was about 65 years old. I don't even know if the seller of the bottles is still alive today.

Christie's absolutely wanted one of these bottles for an auction and I had given Michel Broadbent one bottle for that auction (1787 Lafitte Th.J.). After having established the genuineness of the bottle in a thorough-going examination, Christie's has then sold it at auction on December 5 1985.

**Christie's has had the engraving, the glass and so on closely examined. So why should I doubt about the genuineness ?**

When it came out that someone has fiddled about with the wine of one bottle after it had left my cellar, that was of course grist for the mill of the yellow press which covered the subject in a very primitive way.

I of course couldn't put up with that farce and therefore have decided to have one bottle Lafitte examined by a serious and worldwide renowned scientific institute in the presence of Michel Broadbent and a lawyer from Zurich.

The extensive studies have proved that the wine was absolutely genuine. Prof.Dr. Bonani had sent a part of the wine to his worldwide recognized fellow professor Dr. Hall in Oxford who has come to the same result.

The cork has also been examined and it was proved that it had always been bathed by the wine and belonged to the bottle.

I later have had another bottle "Yquem Th.J." examined as well as its cork and this wine too as well as its cork were genuine.

The examination findings of the wine that had been tampered with after I had sold the bottle were insufficient and also had no real conclusiveness as the´cork hasn't even been examined. One simply wanted to harm me. There was jealousy at work !

Please, understand me when I say that for me the subject "Jefferson wines – genuine or not ?" is definitely closed.  It's really too laborious for me to discuss again about the genuineness of these wines after 21 years.

From a legal point of view, I am – as you know - not your interlocutor. FARR Vintner from London have asked me several times to sell them some Jefferson bottles, which I have finally done. However, the price was far under the sum the bottle had fetched at the CHRISTIE'S auction in London.
Your actual interlocutor are the sirs from FARR Vintners. But I have gladly answered all your questions.

I have been told that you have inquired thoroughly about the Yquem-Jefferson bottles we had opened at the great Yquem tasting in Munich at a dinner in London in autumn last year. You can read in Michel Broadbent's book how the wine was.

I really can't tell you more in a personal conversation than what I have already told you in detail in writing .

I hope that you will understand that a meeting would therefore bring you no new knowledge. Moreover, my English is unfortunately also not so good to speak with you about all the things I have already told you in writing.

I have had all the faxes I have sent you translated from German into English.

However, if you should once come to Europe and if you would like to drink some great wines with me and some other wine friends, I would gladly welcome you.

You know that I always like to drink the wines I buy from wine merchants or at auctions with pleasant wine friends.

A wine cellar should be no strong room, and the wines should be no speculation objects. The cellar masters have produced the wines to be drunk one day.

I am always sad when I see all those fantastic wines in the auction catalogues of the different auction houses which have once be bought by the persons who unfortunately sell them at auctions with the intention to drink them one day.

Or, which is even more sad, they have bought the wines only as a pure speculation object, not for the wine drinking pleasure but only to sell them one day with a large profit.

Have you already opened some magnums from the many great wines you have bought at the ZACHY'S auction in New York ?

As said, if you would like to drink some fantastic wines with me in a nice circle of wine friends at a trip to Europe, I will gladly organize a wine tasting in your honour.

Is there a wine you always wanted to drink but you don't have in your wine cellar ?
I would be glad to fulfil you that wish if I should have this wine in my cellar.

On this, I remain with kind regards from the sunny Kitzbühel

Your

*- Hardy Rodenstock -*