Birgit Kurtz (BK-4220)
F. Paul Greene (FG-1837)
Alston & Bird LLP
90 Park Avenue
New York, NY 10016
Tel. (212) 210-9400

Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM I. KOCH, | |
| Plaintiff, | No. 06 CV 6586 (BSJ) |
| v. | Hon. Barbara S. Jones |
| HARDY RODENSTOCK, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

PLAINTIFF'S ALLEGATIONS ..............................................................................2

ARGUMENT..........................................................................................................5

I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION
OVER PLAINTIFF'S CLAIMS..................................................................5

    A.   THIS COURT LACKS FEDERAL-QUESTION JURISDICTION. ......................5

    B.   THIS COURT LACKS DIVERSITY JURISDICTION. ...................................6

II.   PLAINTIFF'S CLAIM REGARDING THE THOMAS JEFFERSON
WINE IS TIME BARRED. ..........................................................................7

    A.   FLORIDA LAW APPLIES. ...................................................................7

    B.   THE FLORIDA STATUTE OF REPOSE ................................................10

III.   THE COMPLAINT FAILS TO STATE A CLAIM UPON
WHICH RELIEF CAN BE GRANTED. ....................................................12

    A.   PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUD ...............................12

    B.   PLAINTIFF'S ALLEGATIONS FAIL TO MEET
THE REQUIREMENTS OF RULE 9(b). ................................................14

        1.   Allegations Made "Upon Information and Belief"....................15

        2.   Defendant's Alleged Misrepresentations................................16

IV.   THIS COURT LACKS PERSONAL JURISDICTION....................................17

    A.   PLAINTIFF'S BURDEN ....................................................................17

    B.   PLAINTIFF'S MEAGER JURISDICTIONAL ALLEGATIONS........................19

    C.   THIS COURT DOES NOT HAVE PERSONAL
JURISDICTION UNDER CPLR 301. ..................................................19

    D.   THIS COURT DOES NOT HAVE PERSONAL
JURISDICTION UNDER CPLR 302. ..................................................20

V.   PLAINTIFF'S RELIANCE ON THE DJA IS MISPLACED............................................22

    A.   THE DJA MAY NOT BE USED TO RESOLVE DISPUTES
        OF AN UNCLEAR OR PURELY SCIENTIFIC NATURE.................................22

    B.   A DJA CLAIM MUST COMPORT WITH THE INTENDED
        PURPOSES OF THE DJA. .................................................................................23

        1.   The DJA Is Not Intended as a Parallel Avenue for
            Essentially Offensive, Coercive Suits. .....................................................24

        2.   The DJA Is Not Intended for the Resolution of
            Disputes Based Entirely on Past Action. ..................................................26

    C.   THE *ISUZU* CASE ............................................................................................27

CONCLUSION ............................................................................................................29

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adler v. Pataki,*
  204 F. Supp. 2d 384 (N.D.N.Y. 2002)........................................................................24, 26

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
  305 F.3d 120 (2d Cir. 2002) ..............................................................................................18

*Block v. First Blood Associates,*
  988 F.2d 344 (2d Cir. 1993) .......................................................................................10, 21

*Brass v. American Film Technologies, Inc.,*
  987 F.2d 142 (2d Cir. 1993) ..............................................................................................2

*Broadcasting Rights International Corp. v. Societe de Tour de France, S.A.R.L.,*
  675 F. Supp. 1439 (S.D.N.Y. 1987) ..................................................................................20

*CAMOFI Master LDC v. College Partnership, Inc.,*
  452 F. Supp. 2d 463 (S.D.N.Y. 2006) ...........................................................................25-26

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,*
  117 F.3d 655 (2d Cir. 1997) .........................................................................................15-16

*Chase Manhattan Bank, N.A. v. America National Bank & Trust Co.,*
  93 F.3d 1064 (2d Cir. 1996) ...............................................................................................6

*Christopher P. v. Marcus,*
  915 F.2d 794 (2d Cir. 1990) ..............................................................................................24

*Clalit Health Services v. Israel Humanitarian Foundation,*
  385 F. Supp. 2d 392 (S.D.N.Y. 2005) ...........................................................................22-23

*Connolly v. McCall,*
  No. 98 Civ. 2889, 2000 WL 375239 (S.D.N.Y. Apr. 12, 2000), *aff'd,* 254 F.3d 36
  (2d Cir. 2001) ...................................................................................................................24

*Daval Steel Products v. M.V. Juraj Dalmatinac,*
  718 F. Supp. 159 (S.D.N.Y. 1989) ....................................................................................18

*Daventree Ltd. v. Republic of Azerbaijan,*
  349 F. Supp. 2d 736 (S.D.N.Y. 2004) ...........................................................................17-18

*Diversified Carting, Inc. v. City of New York,*
No. 04 Civ. 9507(HB), 2006 WL 147584 (S.D.N.Y. Jan. 20, 2006) ................................ 26

*Dow Jones & Co., Inc. v. Harrods Ltd.,*
237 F. Supp. 2d 394 (S.D.N.Y 2002), *aff'd,* 346 F.3d 357 (2d Cir. 2003).............23-24, 25

*Ehrlich v. Diggs,*
169 F. Supp. 2d 124 (E.D.N.Y. 2001) .............................................................................. 8

*Finance One Public Co. v. Lehman Brothers Special Finance Inc.,*
414 F.3d 325 (2d Cir. 2005) ......................................................................................... 8, 9

*Fosen v. United Technologies Corp.,*
484 F. Supp. 490 (S.D.N.Y 1980) ................................................................................... 9

*Gmurzynska v. Hutton,*
257 F. Supp. 2d 621 (S.D.N.Y. 2003), *aff'd,* 355 F.3d 206 (2d Cir. 2004)................ 23, 25

*Henneberry v. Sumitomo Corp.,*
No. 04 Civ. 2128(PKL), 2005 WL 991772 (S.D.N.Y. Apr. 27, 2005) ............................... 2

*Ippolito v. Meisel,*
958 F. Supp. 155 (S.D.N.Y. 1997) ................................................................................. 26

*Isuzu Motors Ltd. v. Consumers Union of United States, Inc.,*
12 F. Supp. 2d 1035 (C.D. Cal. 1998)....................................................................... 23, 27

*Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG,*
160 F. Supp. 2d 722 (S.D.N.Y. 2001) ........................................................................... 20

*Jazini v. Nissan Motor Co.,*
148 F.3d 181 (2d Cir. 1998) ..................................................................................... 17, 18

*Lamb v. Volkswagenwerk Aktiengesellschaft,*
631 F. Supp. 1144 (S.D. Fla. 1986)............................................................................... 11

*Laub v. Faessel,*
981 F. Supp. 870 (S.D.N.Y. 1997) ........................................................................... 15, 16

*Lazard Freres & Co. v. Protective Life Insurance Co.,*
108 F.3d 1531 (2d Cir. 1997) ................................................................................... 7, 10

*Lehigh Valley Industries, Inc. v. Birenbaum,*
527 F.2d 87 (2d Cir. 1975) ....................................................................................... 17-18

*Madison Models, Inc. v. Casta,*
    No. 01 Civ. 9323(LTS), 2003 WL 21978628 (S.D.N.Y. Aug. 20, 2003) .............17, 19, 21

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians,*
    94 F.3d 747 (2d Cir. 1996) ..................................................................................23

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000) ................................................................................15

*Pilarczyk v. Morrison Knudsen Corp.,*
    965 F. Supp. 311 (N.D.N.Y. 1997), *aff'd,* No. 97-7821, 1998 WL 640447
    (2d Cir 1998) ......................................................................................................15

*Robinson v. Commissioner of Jurors,*
    419 F. Supp. 1189 (S.D.N.Y. 1976) ....................................................................28

*Sack v. Low,*
    478 F.2d 360 (2d Cir. 1973) ................................................................................10

*Schlaifer Nance & Co. v. Estate of Andy Warhol,*
    119 F.3d 91 (2d Cir. 1997) ...............................................................................8, 9

*Seaweed, Inc. v. DMA Product & Design & Marketing LLC,*
    219 F. Supp. 2d 551 (S.D.N.Y. 2002) ................................................................19

*Shepard v. Philip Morris Inc.,*
    No. 96-1720-CIV-T-26B, 1998 U.S. Dist. LEXIS 23410
    (M.D. Fla. Apr. 28, 1998) ...................................................................................11

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,*
    230 F. Supp. 2d 403 (S.D.N.Y. 2002) ................................................................17

*SAS Group, Inc. v. Worldwide Inventions, Inc.,*
    245 F. Supp. 2d 543 (S.D.N.Y. 2003) ................................................................21

*Socialist Workers Party v. Attorney General of the United States,*
    375 F. Supp. 318 (S.D.N.Y. 1974) .....................................................................18

*South Park Associates L.L.C. v. Renzulli,*
    94 F. Supp. 2d 460 (S.D.N.Y.), *aff'd,* No. 00-7656, 2000 WL 33125864
    (2d Cir. Jan. 23, 2000) .........................................................................................7

*Spencer Trask Software & Information Services. v. RPost International Ltd.,*
    383 F. Supp. 2d 428 (S.D.N.Y. 2003) .......................................................12-13, 17

*St. Vincent's Hospital & Medical Center v. Division of Human Rights,*
    553 F. Supp. 375 (S.D.N.Y. 1982) ...................................................................................5

*Tischmann v. ITT/Sheraton Corp.,*
    882 F. Supp. 1358 (S.D.N.Y. 1995) ...............................................................................10

*Town of Orangetown v. Gorsuch,*
    718 F.2d 29 (2d Cir. 1983) ...........................................................................................24

*Trans Pacific Leasing Corp., v. Aero Micronesia, Inc.,*
    26 F. Supp. 2d 698 (S.D.N.Y. 1998) .............................................................................23

*United Food & Commercial Workers Union, Local 919 v. CenterMark Properties,*
    30 F.3d 298 (2d Cir. 1994) .............................................................................................7

*Wiwa v. Royal Dutch Petroleum Co.,*
    226 F.3d 88 (2d Cir. 2000) ...........................................................................................19

## STATE CASES

*In re Allstate Insurance Co.,*
    81 N.Y.2d 219 (1993).......................................................................................................8

*Casey v. Cohan,*
    740 So. 2d 59 (Fl. Dist. Ct. App. 1999).........................................................................12

*Cousins v. Instrument Flyers, Inc.,*
    376 N.E.2d 914 (N.Y. 1978) ...........................................................................................9

*Kish v. A.W. Chesterton Co.,*
    930 So. 2d 704 (Fl. Dist. Ct. App. 2006).......................................................................11

*Mosley v. American Medical International, Inc.,*
    712 So. 2d 1149 (Fla. Dist. Ct. App. 1998).............................................................7, 9, 12

*Schultz v. Boy Scouts of America*, Inc.,
    65 N.Y.2d 189 (1985).......................................................................................................9

*Tanges v. Heidelberg North America, Inc.,*
    93 N.Y.2d 48 (1999)....................................................................................................9, 11

## FEDERAL STATUTES & RULES

28 U.S.C. § 1331 ..............................................................................................................5

28 U.S.C. § 1332 ...........................................................................................................5, 6

28 U.S.C. § 1391 ...........................................................................................................22

28 U.S.C. § 2201 ............................................................................................................5

Fed. R. Civ. P. 9.......................................................................................................14-15

Fed. R. Civ. P. 12(b)........................................................................................................5

## STATE STATUTES & RULES

Fla. Stat. § 95.031 (2002) .............................................................................................9, 11

Fla. Stat. § 95.11(2002) ................................................................................................11

N.Y. C.P.L.R. 202 (2003).............................................................................................11

N.Y. C.P.L.R. 213 (2003 & Supp. 2007) ......................................................................9

N.Y. C.P.L.R. 301 (2001).............................................................................................19

N.Y. C.P.L.R. 302 (2001).............................................................................................21

## PRELIMINARY STATEMENT

In 1988—almost 20 years ago—Plaintiff bought four bottles of wine from two different wine merchants, one in London and one in Chicago. Plaintiff is now unhappy with his purchase. But instead of suing those two wine merchants over the wine's alleged shortcomings, Plaintiff now, almost two decades later, has brought suit against Defendant, even though Defendant did not sell the wine to Plaintiff.

Plaintiff alleges that Defendant made certain statements to Christie's London regarding a cache of wine Defendant bought in the 1980s. That cache of wine was found in a walled-up cellar in Paris, and carries certain traits indicating that it was either bottled for, sold to or owned by Thomas Jefferson. Various experts examined one of the bottles (including the glass, the engraving on the glass, and the wine itself) from the cache, and found it to be authentic. In 1985, Defendant, through Christie's London, sold that bottle at auction, achieving what was purported to be the highest price ever paid for a bottle of wine.

Apparently intrigued by this superlative, Plaintiff, in 1988, bought four bottles of wine. He alleges that he was told, not by Defendant himself, but ostensibly by the wine merchants who sold the bottles to him, that those bottles also originated from the cache Defendant purchased earlier that decade. Plaintiff alleges that he has since discovered that the bottles he purchased are not authentic, and now blames Defendant for his woes.

Plaintiff's claims against Defendant are wholly without merit, and the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b), *inter alia*, for the following reasons:

**I.    Lack of Subject Matter Jurisdiction:**    This Court does not have diversity jurisdiction because Plaintiff has not properly alleged the necessary amount in controversy, and it

does not have federal question jurisdiction because the Declaratory Judgment Act does not supply an independent basis for subject matter jurisdiction.

**II.     Plaintiff's Claim Regarding the Thomas Jefferson Wine Is Time Barred:** Plaintiff commenced this action nearly 10 years after the applicable 12-year Florida statute of repose expired.

**III.    Failure to State a Claim Upon Which Relief Can Be Granted:**  Plaintiff has not properly alleged all the elements of a fraud claim, and has run afoul of Rule 9(b) by not pleading the elements of fraud with the required particularity.

**IV.    Lack of Personal Jurisdiction:**  The Complaint must be dismissed because Plaintiff has not made out a *prima facie* case of personal jurisdiction over Defendant.

**V.     Plaintiff's Reliance on the Declaratory Judgment Act ("DJA") Is Misplaced:** Plaintiff's DJA claim is impermissibly duplicative of Plaintiff's claim for fraud, and otherwise does not comport with the intended goals of the DJA.

## PLAINTIFF'S ALLEGATIONS

For the limited purpose of this motion to dismiss pursuant to Rule 12(b), Plaintiff's factual allegations in the Complaint are presumed to be true. *See Henneberry v. Sumitomo Corp.*, No. 04 Civ. 2128(PKL), 2005 WL 991772, at *4 (S.D.N.Y. Apr. 27, 2005).  This includes statements made in the exhibits to the Complaint. *See id.* ("When deciding a motion to dismiss, the Court may consider: 'the factual allegations in [the] complaint [and] documents attached to the complaint as an exhibit or incorporated in it by reference' . . . ." (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993))).

Plaintiff, a resident of Florida, is a wealthy and sophisticated businessman, who is also an avid wine collector.  (Compl. ¶¶ 20-21, 35.)  Defendant, a resident and citizen of Germany, is a renowned collector and seller of old and rare wines, with a sterling reputation in the industry. (*Id.* ¶¶ 18, 30.)

In 1988—almost 20 years ago—Plaintiff allegedly purchased four bottles of wine he believes at one time belonged to Defendant.  (*Id.* ¶¶ 20-21, 35.)  Plaintiff allegedly bought these bottles believing they came from a cache of wine that may have been bottled for, sold to or owned by Thomas Jefferson.  (*Id.* ¶¶ 15, 20-21.)[1]  Plaintiff claims that he became interested in the Thomas Jefferson Wine when he heard of a 1985 wine auction at Christie's in London at which one such bottle was sold.  (*Id.* ¶ 20.)  Plaintiff alleges that, when he purchased the four bottles, he relied on certain statements made by Christie's London on the occasion of the 1985 wine auction, and that these statements were based on information Defendant provided to Christie's London.  (*Id.*)  Plaintiff does not allege how much he paid for the four bottles, nor does he allege their current value.

In 2005, Plaintiff allegedly purchased a fifth bottle of wine, a 1921 Petrus Magnum. (*Id.* ¶ 35.)  Plaintiff alleges that he paid $33,150 for the bottle.  (*Id.*)  He does not, however, allege any actionable statements or omissions by Defendant vis-à-vis the 1921 Petrus or what the bottle is worth today.  In addition, Plaintiff's claim for declaratory judgment concerns only what Plaintiff terms the "Rodenstock wine"—an undefined term in the Complaint—not the 1921 Petrus.

---

[1]  In the Complaint, Plaintiff terms the four bottles he purchased the "Thomas Jefferson wine." (*Id.* ¶¶ 4-9.)  The Complaint uses this term inconsistently, however, referring at times to the four bottles Plaintiff purchased that allegedly stem from the 1985 Thomas Jefferson cache, and at times to the cache as a whole.  In the instant motion, the term "Thomas Jefferson Wine" shall refer only to the four bottles that Plaintiff allegedly purchased.  The 1985 Thomas Jefferson cache discovered and sold to Defendant will be referred to as the "Thomas Jefferson Cache."

Plaintiff has since come to question the authenticity of these five bottles. (*Id.* ¶ 23.) He alleges that the Thomas Jefferson Wine is inauthentic, intimating that it was forged by Defendant. (*Id.* ¶¶ 3, 22-24, 34.) Plaintiff also alleges that Defendant is "the source" of one or more counterfeit magnum bottles of 1921 Petrus, one of which Plaintiff alleges he purchased. (*Id.* ¶¶ 10, 38.) Plaintiff does not allege, however, how, if at all, the bottle made its way from Defendant's possession, if at all, into Plaintiff's possession.

Plaintiff alleges that he bought one bottle of Thomas Jefferson Wine from the Chicago Wine Co. in November of 1988, three bottles of Thomas Jefferson Wine from Farr Vintners, London in December 1988, and the 1921 Petrus from Zachy's in New York in October 2005. (*Id.* ¶ 35.) These three wine merchants are not parties to this case.

Significantly, Plaintiff fails to allege:

- any direct sales or other commercial relationship between Plaintiff and Defendant;

- any direct statements or other representations by Defendant to Plaintiff before Plaintiff's respective purchases of the bottles at issue;

- the prices Plaintiff paid for the Thomas Jefferson Wine;

- the current value of either the Thomas Jefferson Wine or the 1921 Petrus Magnum; or

- if and how Plaintiff has been injured in any way by any alleged statements by Defendant.

In 2006, Plaintiff commenced this case, raising two claims: one alleging a complex and insidious scheme to defraud, and the other seeking declaratory judgment that potentially all wines in which Defendant has dealt are forgeries. (*Id.* ¶¶ 39-50.)

## ARGUMENT

Defendant respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (3) & (6), to dismiss the Complaint in its entirety.

## I.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS.

A federal district court may only hear a case when it has federal-question and/or diversity jurisdiction over the claim(s) asserted in the complaint. *See, e.g.,* 28 U.S.C. §§ 1331-1332. Here, Plaintiff brings two claims: (i) a common-law (*i.e.*, state law) fraud claim, and (ii) a claim for declaratory judgment under the federal Declaratory Judgment Act ("DJA"). Because Plaintiff fails to allege sufficient facts to give rise to subject matter jurisdiction, neither claim may be heard by this Court.

### A.  THIS COURT LACKS FEDERAL-QUESTION JURISDICTION.

A federal district court has federal-question jurisdiction only when at least one of the plaintiff's claims arises under federal law. *See* 28 U.S.C. § 1331. Although the DJA is a federal law allowing federal courts to hear claims for declaratory judgment, the DJA, on its own, does not give rise to federal question jurisdiction. *See* 28 U.S.C. § 2201 (creating a cause of action for declaratory judgment "in a case of actual controversy within [the federal court's] jurisdiction"). Only where a plaintiff's claims give rise to a separate and independent source of subject matter jurisdiction—whether of the federal-question or diversity variety—may a federal court hear claims under the DJA. "Clearly, the mere fact that the complaint seeks a declaratory judgment under 28 U.S.C. § 2201 does not create subject matter jurisdiction." *St. Vincent's Hosp. & Med. Ctr. v. Div. of Human Rights*, 553 F. Supp. 375, 377-78 (S.D.N.Y. 1982). It therefore follows that this Court does not have federal question jurisdiction on the basis of Plaintiff's DJA claim.

**B.     THIS COURT LACKS DIVERSITY JURISDICTION.**

Diversity jurisdiction is present only where:  (i) the parties are citizens of different states (including a foreign state), and (ii) the amount in controversy exceeds $75,000.   28 U.S.C. § 1332.   Here, Plaintiff fails to meet the second diversity-jurisdiction requirement, *i.e.,* the amount in controversy.

It is unclear from the face of the Complaint just what damages Plaintiff is seeking. Plaintiff alleges that he purchased wine, the origin of which he now questions, but there is no reference in the Complaint to:  (i) how much Plaintiff paid for the wine; (ii) how much the wine is actually worth (*i.e.,* whether it is now worth more or less than what Plaintiff paid for it); or (iii) whether Plaintiff has suffered any damage at all as a result of any actions by Defendant.

Plaintiff's only allegation that could serve in any way as a benchmark of possible damages is the purchase price for the 1921 Petrus.  Plaintiff makes no allegation regarding the purchase price of the Thomas Jefferson Wine or the value of the Thomas Jefferson Wine even if it were, as Plaintiff claims, inauthentic.   Indeed, Plaintiff's only allegation concerning the amount in controversy is itself conclusory and wholly unsupported, stating simply that "the matter in controversy exceeds $75,000." (Compl. ¶ 13.)

Once such a bare allegation is challenged by a motion to dismiss pursuant to Rule 12(b)(1) such as this one, the burden falls upon plaintiff to show facts sufficient to meet the amount-in-controversy requirement. *See Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Trust Co.*, 93 F.3d 1064, 1070 (2d Cir. 1996) ("[A] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." (internal quotation marks omitted)).   Without further information as to:  (i) the purchase price of the four bottles of Thomas Jefferson Wine

allegedly purchased by Plaintiff; (ii) the whereabouts of and current title to that wine; as well as (iii) the current value thereof, Plaintiff simply fails to allege facts sufficient to meet the amount-in-controversy requirement. As a result, if Plaintiff is unable to prove such facts, he will be unable to meet his burden under 28 U.S.C. § 1332. *See S. Park Assocs. L.L.C. v. Renzulli*, 94 F. Supp. 2d 460, 462 (S.D.N.Y.) ("[W]here, as here, jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with competent proof and justify [its] allegations by a preponderance of evidence." (citing *United Food & Commercial Workers Union, Local 919 v. CenterMark Props.*, 30 F.3d 298, 306 (2d Cir. 1994)) (internal quotation marks omitted)), *aff'd*, No. 00-7656, 2000 WL 33125864 (2d Cir. Jan. 23, 2000). If Plaintiff cannot meet that burden, the Complaint must be dismissed in its entirety.

## II.   PLAINTIFF'S CLAIM REGARDING THE THOMAS JEFFERSON WINE IS TIME BARRED.

Plaintiff alleges that he bought his bottles of Thomas Jefferson Wine in 1988 in reliance on statements made by Defendant in or before 1985. (Compl. ¶¶ 20, 21.) Plaintiff commenced this action in August 2006, *i.e.*, more than 20 years after Defendant's alleged statements. Under the applicable Florida statute, Plaintiff's claims regarding the Thomas Jefferson Wine, if any, expired more than eight years before this case was commenced. Plaintiff's present claims regarding the Thomas Jefferson Wine are, therefore, time barred and must be dismissed.

### A.   FLORIDA LAW APPLIES.

Where a cause of action before a federal court implicates the laws of more than one state, the court must conduct a conflict-of-laws analysis—applying the conflict-of-laws rules of the forum state—in order to determine which state's law should apply. *See Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1538-39 (2d Cir. 1997) ("A federal court sitting in diversity must apply the choice of law rules of the forum state, in this case New York."). The

first step in such an analysis is to determine whether or not there is an actual conflict between the laws of the jurisdictions at issue. *See In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993). An actual conflict exists where "'the applicable law from each jurisdiction provides different substantive rules [that are] relevant to the issue at hand, [and] have a significant *possible* effect on the outcome of the trial." *See Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005) (internal citations and quotation marks omitted); *see also Ehrlich v. Diggs*, 169 F. Supp. 2d 124, 128-31 (E.D.N.Y. 2001) (finding an actual conflict of law between the California and New York Statutes of Frauds, where the California Statute would allow recovery and the New York Statute would not).

Here, the laws of New York (the forum of the suit) and Florida (the situs of the tort at issue as well as Plaintiff's domicile state) are implicated. (Compl. at 1 & ¶ 11.) At first blush, the laws of New York and Florida are similar concerning the elements of a fraud action. *Compare Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) ("Under New York law, for a plaintiff to prevail on a claim of fraud, he must prove five elements by clear and convincing evidence: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff.") *and Mosley v. Am. Med. Int'l, Inc.*, 712 So. 2d 1149, 1151 (Fla. Dist. Ct. App. 1998) ("To prevail on a theory of fraudulent misrepresentation, a plaintiff must plead: (1) a false statement of fact; (2) known by the defendant to be false at the time that it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage or injury.").

There is, however, one significant and substantive difference between the fraud law of Florida and that of New York: Florida's statute of repose. *See, e.g.,* Fla. Stat. § 95.031(2)(a) (2002). As discussed in more detail below, Florida places a twelve-year limit on the time in which a plaintiff may bring a claim for fraud. *See id.* In New York, a fraud claim may be brought any time within the greater of six years from commission or two years from discovery of (or the time plaintiff should have reasonably discovered) the tort. *See* N.Y. C.P.L.R. 213 (McKinney 2003 & Supp. 2007). The Court of Appeals has made clear that a statute of repose, such as the one at issue from Florida, is substantive—not procedural. *See Tanges v. Heidelberg N. Am., Inc.,* 93 N.Y.2d 48, 56 (1999). It therefore follows that, on the basis of this substantive conflict between the laws of Florida and New York, an actual conflict of laws exists vis-à-vis Plaintiff's fraud claim. *See Finance One Pub. Co.,* 414 F.3d at 331 (defining an "actual conflict" as substantive in nature).[2]

Where an actual conflict exists in a tort case, New York courts generally apply the law of the situs of the tort (*lex loci delicti*). *See Fosen v. United Techs. Corp.,* 484 F. Supp. 490, 504 (S.D.N.Y. 1980) ("'[L]ex loci delicti remains the general rule in tort cases to be displaced only in extraordinary circumstances.'" (citing *Cousins v. Instrument Flyers, Inc.,* 376 N.E.2d 914, 915 (N.Y. 1978)). The New York Court of Appeals has defined the situs of a tort as "the place where the last event necessary to make the actor liable occurred." *See Schultz v. Boy Scouts of Am., Inc.,* 65 N.Y.2d 189, 195 (1985). Under both New York and Florida law, the last event giving rise to liability in a action for fraud is harm to the plaintiff. *Compare Schlaifer Nance & Co.,* 119 F.3d at 98 *and Mosley,* 712 So. 2d at 1151. In the present case, as Plaintiff is a resident of

---

[2]   Taking all the allegations in the Complaint as true, as required on a motion to dismiss under Rule 12(b), the two laws appear to be in conflict with respect to the question whether Plaintiff's fraud claim is time barred or not. Defendant reserves the right, however, to argue that, upon a full record, the claim is equally time barred under New York's CPLR 213.

Florida, the last event that could potentially give rise to liability on behalf of Defendant under Plaintiff's fraud claim took place in Florida. *See Block v. First Blood Assocs.*, 988 F.2d 344, 349 (2d Cir. 1993) (citing *Sack v. Low*, 478 F.2d 360, 366 (2d Cir. 1973) (situs of damages under a fraud claim is "normally the plaintiff's residence")). Hence, under the general rule, the substantive law of Florida applies.

In addition to the general, law-of-the-situs rule, courts in New York sometimes apply a "grouping-of-contacts" or "interests" test. *See Lazard Freres & Co.,* 108 F.3d at 1538-39. Under the grouping-of-contacts test, a court, in deciding which law to apply, looks primarily at the plaintiff's domicile and the situs of the tort. *See Schultz*, 65 N.Y.2d at 195; *Tischmann v. ITT/Sheraton Corp.*, 882 F. Supp. 1358, 1366 (S.D.N.Y. 1995) (stating that the "significant [conflict-of-laws] factors to be considered in tort actions are almost exclusively, the parties' domiciles and the locus of the tort" (internal quotation marks omitted)). Here, both factors favor application of Florida law: not only is Plaintiff an admitted domiciliary of Florida (Compl. ¶ 11), Florida is also the situs of the fraud Plaintiff is alleging, as Florida is where Plaintiff would have been injured, if at all, by Defendant's alleged misrepresentations, *see Block*, 988 F.2d at 349.

As a result, under either the situs-only or the grouping-of-contacts test, this Court should apply the substantive law of Florida in regard to Plaintiff's fraud claim.

**B.      THE FLORIDA STATUTE OF REPOSE**

Under the applicable Florida statute of repose, Plaintiff's fraud claim is time barred. With respect to a claim for fraud, Florida law provides as follows:

> An action founded upon fraud under s. 95.11(3) . . . must be begun within the period prescribed in this chapter, with the period running from the time the facts give rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed

elsewhere in s. 95.11(3), ***but in any event an action for fraud under s. 95.11(3) must be begun <u>within 12 years after the date of the commission of the alleged fraud</u>, regardless of the date the fraud was or should have been discovered***.

Fla. Stat. § 95.031(2)(a) (2002) (emphasis added).[3]   This provision is a "statute of repose," rather than a "statute of limitations."  *See Tanges*, 93 N.Y.2d 48; *see also Shepard v. Philip Morris Inc.*, No. 96-1720-CIV-T-26B, 1998 U.S. Dist. LEXIS 23410, at *10-*12 (M.D. Fla. Apr. 28, 1998); *Kish v. A.W. Chesterton Co.*, 930 So. 2d 704, 705 (Fla. Dist. Ct. App. 2006).[4]

"A statute of repose terminates the right to bring an action after a lapse of a specified period." *Shepard*, 1998 U.S. Dist. LEXIS 23410, at *12. "The purpose of a statute of repose is 'to encourage diligence in the prosecution of claims, eliminate the potential of abuse from a stale claim, and ultimately foster certainty and finality in liability.'"  *Id.* (quoting *Lamb v. Volkswagenwerk Aktiengesellschaft*, 631 F. Supp. 1144, 1147 (S.D. Fla. 1986)). "The policy underlying statutes of repose is that there must come a time when a potential defendant ought not to be called on to defend a claim when the evidence has been lost, memories have faded, and witnesses have disappeared." *Id.*[5]  Fraud is exactly the "type of claim that is most susceptible to concerns of stale memories, and most deserving" of that admonition. *Kish*, 930 So. 2d at 707.[6]

Here, Defendant committed the alleged fraud—*i.e.*, made the alleged misrepresentations—in 1985 at the latest, *i.e.*, more than twenty years before this case was

---

[3]  Fla. Stat. § 95.11(3) provides that an action based on fraud must be commenced within four years. Fla. Stat. § 95.11(3)(j) (2002).

[4]  Even if, *arguendo*, this Court were to find that Fla. Stat. § 95.031(2)(2) is a "statute of limitations" rather than a "statute of repose," it would still bar Plaintiff's fraud claim here via the New York borrowing statute, CPLR 202. *See* N.Y. C.P.L.R. 202 (McKinney 2003).

[5] Defendant hereby expressly reserves the defense of laches, which is based on similar reasoning.

[6] Plaintiff himself fails to allege many of the details of Defendant's alleged fraud, to wit, the exact misrepresentations at issue, to whom those alleged misrepresentations were made, the manner in which the alleged misrepresentations were communicated, as well as where and when they were communicated. These glaring omissions further underscore the dangers inherent in stale claims, which dangers give rise to statutes of repose.

commenced. (Compl. ¶¶ 17, 20.) The twelve-year period in Fla. Stat. § 95.031(2)(a), therefore, expired in 1997 at the latest, *i.e.*, almost 10 years before Plaintiff commenced this case in 2006. Thus, Plaintiff's claims regarding the Thomas Jefferson Wine are time barred and must be dismissed.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Both of Plaintiff's claims are insufficiently pled and must, therefore, be dismissed under either Rule 12(b)(6), for failure to state a claim upon which relief can be granted, or Rule 9(b), for failure to plead a fraud claim with particularity.

### A.   PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUD.

In order to properly plead a fraud claim, Plaintiff must allege: (i) a misrepresentation or omission of material fact; (ii) Defendant's knowledge of its falsity; (iii) intent to defraud; (iv) justifiable reliance by Plaintiff; and (v) resulting injury consisting of actual pecuniary losses. *See Mosley*, 712 So. 2d at 1151; *Casey v. Cohan*, 740 So. 2d 59, 62 (Fla. Dist. Ct. App. 1999) (stating that in order for an alleged misrepresentation to be material, it "'must affect the value of the property or cause loss to the purchaser'"). Although the Complaint pays lip service to the first four of these elements with respect to the Thomas Jefferson Wine (*see* Compl. ¶¶ 40-44), it fails to plead actual pecuniary losses in any detail sufficient to satisfy the element of resulting injury.[7] *See, e.g., Casey*, 740 So. 2d at 62 ("Fraud without resulting pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal; courts of justice do not act as mere tribunals of conscience to enforce duties which are purely moral."); *see also, e.g., Spencer Trask Software & Info. Servs. L.L.C. v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 454-55 (S.D.N.Y.

---

[7]   As outlined in more detail below, Plaintiff's mere lip service to the elements of his fraud claim prove fatal under the requirements of Rule 9(b).

2003) (dismissing plaintiff's fraud claim for failure to plead adequate facts to support a claim for damages).[8]

The *Spencer Trask* case is illustrative on this point. In *Spencer Trask*, the plaintiffs, an investment banking firm, sued an Internet start-up company for fraud. *See id.* at 435-37. The plaintiffs alleged that they had invested $500,000 in defendants, and that their investment had lost value as a result of certain misrepresentations by the defendants. *See id.* at 455. Judge Leisure nevertheless found that the plaintiffs had inadequately pled the damages element of their fraud claims because they had "failed to allege any facts that could lead a trier of fact to find that they had suffered an injury as a result of [RPost's] alleged misrepresentations." *See id.* at 454. Judge Leisure went on to state that, "[a]t a minimum, the plaintiffs must make factual allegations describing the pecuniary or out-of-pocket loss sustained as a result of the defendants' alleged misrepresentations in order to maintain a claim for damages based on fraud," and that "plaintiffs' conclusory allegation of a decrease in the value of their investment, without any factual allegations to support a finding that the value of the plaintiffs' investment has in fact declined or is worth less than what the plaintiffs paid for it, does not constitute an adequate allegation of injury." *See id.* at 454-55.

In the present case, the Complaint falls short of what even the unsuccessful plaintiffs in *Spencer Trask* alleged. As discussed above, there are only four bottles of wine truly at issue in this action as pled by Plaintiff: those constituting the Thomas Jefferson Wine. Plaintiff fails to allege any pecuniary loss whatsoever in relation to these four bottles, omitting not only the purchase price (in contrast to the plaintiffs in *Spencer Trask*, who clearly alleged the amount they

---

[8] Although Florida law applies to Plaintiff's fraud claim, New York and Florida law, as discussed in Point II above, are nearly identical on the elements required for a fraud claim. As a result, the *Spencer Trask* case, which applies New York law, is instructive on the issue of damages.

invested in defendants) and whether or not Plaintiff still owns them, but also whether or not the bottles have lost value as a result of any alleged misrepresentation made by Defendant. Indeed, the Complaint is devoid of any allegation whatsoever on which a finder of fact could base a finding of damages vis-à-vis the Thomas Jefferson Wine. Without allegations as to either the value of the bargain Plaintiff made if his allegations were true, which they are not, or the consideration paid by Plaintiff for that bargain, a trier of fact simply cannot ascertain the damages incurred by Plaintiff, if any.

With respect to the fifth bottle referenced in the Complaint, the 1921 Petrus Magnum, in addition to having failed completely to allege any misrepresentations by Defendant in relation to that bottle, the Complaint lacks any allegation whatsoever that that bottle has decreased in value as a result of any misrepresentations by Defendant.[9] Because Plaintiff alleges no misrepresentations vis-à-vis the 1921 Petrus, that bottle is not properly the subject of Plaintiff's fraud claim.

As a result, Plaintiff's fraud claim is facially insufficient and should be dismissed.

### B.   PLAINTIFF'S ALLEGATIONS FAIL TO MEET THE REQUIREMENTS OF RULE 9(b).

Over and above Plaintiff's failure to adequately plead the elements of a fraud claim, Plaintiffs allegations fail to meet the requirements of Federal Rule of Civil Procedure 9(b), *i.e,* that allegations of fraud be pled with particularity. *See* Fed. R. Civ. P. 9(b) ("In all averments of

---

[9]   Plaintiff states that he purchased the 1921 Petrus at a wine auction house. (Compl. ¶ 35.) He also takes pains to justify the price he paid for that bottle, representing to the Court that it is "an exceptional vintage," has achieved a "100 point rating," and is "to state it mildly, out of this universe." (*Id.*) As a result, if Plaintiff purchased the 1921 Petrus at auction, the price he paid may not accurately reflect the actual value of the bottle. Indeed, the bottle may have been the subject of a heated bidding war, artificially inflating the sale price above the bottle's actual value. It goes without saying that any "decrease" in value of Plaintiff's 1921 Petrus subsequent to such a bidding war cannot be made part of Plaintiff's fraud claim.

fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). Rule 9(b) has been interpreted to require a plaintiff to allege: (i) the identity of the person who made the alleged misrepresentations at issue; (ii) the time, place, and content of the alleged misrepresentations; (iii) the resulting injury; and (iv) the method by which the alleged misrepresentations were communicated. *See, e.g., Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (setting forth the information to be pled with particularity under Rule 9(b)); *Laub v. Faessel*, 981 F. Supp. 870, 872 (S.D.N.Y. 1997) ("Allegations of fraud should specify the time, place, speaker, and content of the alleged misrepresentations." (internal quotation marks omitted)). Failure to identify the alleged misrepresentations at issue can be fatal under Rule 9(b). *See Pilarczyk v. Morrison Knudsen Corp.*, 965 F. Supp. 311, 321 (N.D.N.Y. 1997) (dismissing a fraud claim, *inter alia*, for failure to identify the specific misrepresentations at issue), *aff'd*, No. 97-7821, 1998 WL 640447 (2d Cir. Apr. 6, 1998). Moreover, averments of fraud may not ordinarily be made on information and belief. *See Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 664 (2d Cir. 1997) ("Allegations of fraud cannot ordinarily be based upon information and belief, except as to matters peculiarly within the opposing party's knowledge." (internal quotation marks omitted)).

### 1.    Allegations Made "Upon Information and Belief"

The allegations in the Complaint do not meet the particularity requirements of Rule 9(b) because *all* averments as to Defendant (not just those "peculiarly within [Defendant's] knowledge," if any) are made on information and belief. (*See* Compl. at 1 ("Plaintiff William I. Koch alleges, on personal knowledge as to himself, *and on information and belief as to Defendant Hardy Rodenstock* . . . ." (emphasis added)).) As the *Campaniello* case makes clear, inasmuch as Plaintiff seeks to allege statements or representations made by Defendant on which

Plaintiff allegedly relied when purchasing the Thomas Jefferson Wine, Plaintiff's allegations do not concern "matters peculiarly within the opposing party's knowledge." *See Campaniello*, 117 F.3d at 664. As a result, Plaintiff may not properly make such allegations on information and belief. *See id.* For that reason alone, Plaintiff's fraud claim should be dismissed.

### 2.    Defendant's Alleged Misrepresentations

The Complaint also fails to meet the requirements of Rule 9(b) inasmuch as it fails to allege:  (i) the content of any alleged misrepresentations made by Defendant; (ii) the time, manner, and place of any such alleged misrepresentation; and (iii) any resulting injury to Plaintiff. As to the content of the alleged misrepresentations, Plaintiff fails to allege a single substantive statement by Defendant regarding the authenticity of the Thomas Jefferson Wine upon which Plaintiff relied when purchasing it. According to the Complaint, the statements as to the authenticity of the Thomas Jefferson Wine upon which Plaintiff allegedly relied were made by Christie's London and not by Defendant. (Compl. ¶ 20.)

Plaintiff does allege that the Christie's statements were "based on information provided to Christie's [London] by Rodenstock." (*Id.*)  Such an allegation, however, is facially insufficient under Rule 9(b) inasmuch as it fails to set forth:  (i) the content of the "information" at issue; (ii) whether and exactly how such information was in any way a misrepresentation; (iii) when, where and how the information was transmitted; or (iv) whether Plaintiff suffered any injury as a result of the information. *See, e.g., Laub*, 981 F. Supp. at 872 (making clear that a fraud plaintiff must allege "time, place, speaker, and content" of the alleged misrepresentations to meet the requirements of Rule 9(b)).

Specifically in regard to injury and as outlined above, Plaintiff makes no substantive allegation as to how he has been injured by any alleged misrepresentation made by Defendant.

*See Spencer Trask,* 383 F. Supp. 2d at 457-58 (making clear that the Rule 9(b) requirement of pleading fraud with particularity applies to allegations of damages as well).

As a result, Plaintiff's fraud claim should be dismissed.

## IV.   THIS COURT LACKS PERSONAL JURISDICTION.

At this stage of the proceeding, Plaintiff must present allegations sufficient to establish a *prima facie* case for personal jurisdiction over Defendant. Plaintiff fails to do so. Although the Complaint extends to 50 paragraphs, there is a dearth of jurisdictionally relevant allegations. Even a most generous reading of the Complaint does not yield sufficient contacts with the forum to make out a *prima facie* case of personal jurisdiction over Defendant. Defendant should not be required to participate in what could be protracted and expensive litigation in the mere hope that Plaintiff will eventually uncover enough facts to establish a *prima facie* case of personal jurisdiction over Defendant. Thus, Defendant moves this Court to dismiss the Complaint under Rule 12(b)(2).

### A.   PLAINTIFF'S BURDEN

A court "is obligated to dismiss an action against a defendant over which it has no personal jurisdiction." *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,* 230 F. Supp. 2d 403, 406 (S.D.N.Y. 2002). Plaintiff bears the burden of proving that personal jurisdiction exists. *See, e.g., Lehigh Valley Indus., Inc. v. Birenbaum,* 527 F.2d 87, 92 (2d Cir. 1975); *Daventree Ltd. v. Republic of Azerbaijan,* 349 F. Supp. 2d 736, 757 (S.D.N.Y. 2004); *Madison Models, Inc. v. Casta,* No. 01 Civ. 9323(LTS), 2003 WL 21978628, at *2 (S.D.N.Y. Aug. 20, 2003).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction, *i.e.,* by making a *prima facie* showing of jurisdiction." *Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir. 1998) (internal quotation marks and citations omitted); *see also Lehigh Valley,* 527 F.2d at 92

(party who asserts personal jurisdiction must show by the complaint and supporting affidavits the essential requirements of the jurisdictional statute). This Court is not required, however, to accept "a legally conclusory assertion or draw argumentative inferences." *Daventree*, 349 F. Supp. 2d at 757 (internal quotation marks omitted); *see also Jazini*, 148 F.3d at 185 (court is "'not bound to accept as true a legal conclusion couched as a factual allegation'").

If this standard were not applied, "the mere commencement of a lawsuit [would] entitle the party to use the court processes to attempt to find support for having commenced the litigation – [something] that should have been done before litigation began." *Daval Steel Prods. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159, 162 (S.D.N.Y. 1989) (dismissing complaint where there was "no indication that defendants were or are doing business in New York" or that the action had "any connection whatsoever" to New York). Here, Plaintiff attempts to do precisely what the case law prohibits—force Defendant "to remain in an action during discovery and other pre-trial proceedings, and participate in such proceedings . . . on the mere basis that [Plaintiff] hopes somehow and somewhere to find enough facts to create grounds for jurisdiction." *See Socialist Workers Party v. Attorney Gen. of the U.S.*, 375 F. Supp. 318, 325 (S.D.N.Y. 1974).

Federal courts sitting in New York engage in a two-step analysis when determining whether they have personal jurisdiction over a defendant: examining first whether New York law supports the exercise of personal jurisdiction and, if so, whether New York's extension of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002); *Jazini*, 148 F. 3d at 183-84. CPLR 301 and 302, made applicable here by Rule 4(e), govern the exercise of jurisdiction over non-resident defendants. Because there are no allegations of specific facts establishing personal jurisdiction over Defendant pursuant to either CPLR 301 or CPLR 302,

Plaintiff has not made the required *prima facie* showing, and this Court should dismiss the Complaint.

**B.      PLAINTIFF'S MEAGER JURISDICTIONAL ALLEGATIONS**

Apart from the conclusory allegations that Defendant "has transacted business in this district, events giving rise to the claims occurred in this district, and [Defendant] is subject to personal jurisdiction in this district" (Compl. ¶14), the only allegations in the Complaint that could possibly be relevant to the personal jurisdiction analysis here are as follows:

- Defendant has attended wine tastings in New York (Compl. ¶ 2); and

- Defendant sent a fax letter to Plaintiff in New York in response to a fax letter Plaintiff had sent to him in Germany (*id.* ¶¶ 25-26).

These paltry allegations do not meet the pleading standard set forth above and are woefully insufficient to give rise to personal jurisdiction over Defendant under CPLR 301 or 302.

**C.      THIS COURT DOES NOT HAVE PERSONAL JURISDICTION UNDER CPLR 301.**

CPLR 301 provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. 301 (McKinney 2001). CPLR 301 codifies the traditional common law bases for personal jurisdiction: presence, consent, domicile, and doing business. *See Seaweed, Inc. v. DMA Prod. & Design & Mktg. LLC*, 219 F. Supp. 2d 551, 554 (S.D.N.Y. 2002). Plaintiff does not allege that Defendant is present or domiciled in New York or that he has consented to jurisdiction in New York.

The "doing business" standard is a "stringent one" and requires Plaintiff to show that Defendant engaged in "continuous, permanent, and substantial activity in New York." *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000); *Madison Models*, 2003 WL 21978628, at *3. Courts have looked at "traditional indicia" when deciding whether a defendant's activities in the forum are "continuous, permanent and substantial." Not only has

Plaintiff failed to allege any of the traditional indicia sufficient to satisfy CPLR 301, he hangs his entire jurisdictional argument vis-à-vis Defendant on the excessively slender reed of the two allegations set out above.  Plaintiff's slender reed is diminished further by the fact that a single act of correspondence cannot give rise to personal jurisdiction under CPLR 301.  *See Broadcasting Rights Int'l Corp. v. Societe de Tour de France, S.A.R.L*, 675 F. Supp. 1439, 1443 (S.D.N.Y. 1987) (plaintiff failed to show a basis for personal jurisdiction under CPLR 301 even where foreign defendant had made multiple telephone calls and sent telexes to the state).[10]

As a result, Plaintiff has not pled a basis for exercising general jurisdiction pursuant to CPLR 301.

### D.   THIS COURT DOES NOT HAVE PERSONAL JURISDICTION UNDER CPLR 302.

CPLR 302(a), New York's long-arm statute, permits the exercise of personal jurisdiction over a non-resident defendant who performs certain acts, where plaintiff's claims arise out of those acts.  The only subsection of CPLR 302(a) that could possibly be implicated here is CPLR 302(a)(3).  That subsection allows this Court to exercise personal jurisdiction over Defendant if:

- Defendant committed a tortious act outside of New York; and
- Plaintiff's claims arise from that act; and
- the tortious act caused injury to person or property within New York; and
  - (i) Defendant regularly does or solicits business or engages in any other persistent course of conduct in New York, or derives substantial revenue from goods used or consumed or services rendered in New York; or
  - (ii) Defendant expected or should reasonably have expected the act to have consequences in New York; and Defendant derived "substantial revenue" from interstate or international commerce.

---

[10]  Furthermore, Plaintiff's claim that Defendant has "attended wine tastings" in New York is insufficient inasmuch as it fails to allege the time period, frequency, duration or purpose of any such visit. *See Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) (holding that visits to the forum must be "systematic" and "continuous" to support a finding of personal jurisdiction under CPLR 301).

*See* N.Y. C.P.L.R. 302 (2001).    Plaintiff has not, however, alleged these elements here.
Assuming, *arguendo*, that Defendant's alleged representations to Christie's in London are an
actionable tort, the injury of which Plaintiff now complains did not occur "within" New York.
Rather, any injury to Plaintiff occurred in Florida, where he resides. *See Block,* 988 F.2d at 349
(stating that the situs of the injury of a fraud claim is the Plaintiff's residence).    In addition, the
Complaint fails to adequately allege the other requirements of subsections (i) and (ii) of CPLR
302(a)(3), *e.g.*, by failing to allege that Defendant:  (i) "regularly does or solicits business" in
New York; (ii) engages in "any other persistent course of conduct" in New York; (iii) derives
any revenue whatsoever from goods used or consumed in New York; or (iv) derives "substantial
revenue" from interstate or international commerce.    Moreover, the one direct contact with New
York Plaintiff does allege—the fax reply sent from Defendant to Plaintiff at Plaintiff's family
residence in New York—was sent in 2006, *i.e.*, more than 11 years after the misrepresentations
alleged by Plaintiff.    As such, Plaintiff's claims—based as they are on purchases in 1988—
cannot be said to arise out of this fax reply, as required by CPLR 302.    *See SAS Group, Inc. v.
Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 548 (S.D.N.Y. 2003) ("The defendant['s] New
York activities must be substantially proximate to the allegedly unlawful act before the cause of
action can be said to arise out of those activities." (internal quotation marks omitted)).

        As a result, the Complaint fails to allege any set of facts sufficient to support a *prima
facie* case for the exercise of general or specific personal jurisdiction over Defendant, and this
Court should dismiss the Complaint in its entirety.[11]

---

[11]  Because there is no basis for the exercise of personal jurisdiction over Defendant pursuant to
New York law, it is not necessary to consider whether jurisdiction would be permissible under
the Due Process Clause of the Fourteenth Amendment. *See, e.g., Madison Models*, 2003 WL
21978628, at *6 ("Because the Court finds no basis for the exercise of personal jurisdiction over

## V.    PLAINTIFF'S RELIANCE ON THE DJA IS MISPLACED.

First, in his claim for declaratory judgment, Plaintiff asks this Court to decide on the authenticity of what he terms "the Rodenstock wine." (Compl. ¶ 50.) It is, however, patently ambiguous to what wine the Plaintiff is referring:  does he mean the four bottles of Thomas Jefferson Wine Plaintiff allegedly purchased; those four bottles together with the 1921 Petrus Magnum Plaintiff allegedly purchased; all bottles from the Thomas Jefferson Cache; every 1921 Petrus Magnum in the world (which Plaintiff intimates are all fakes); or perhaps all wine ever owned or sold by Defendant?

Apart from Plaintiff's supreme lack of clarity, the case law is clear that a declaratory judgment action is not a proper means with which to assert such a claim—as it is based not upon the legal rights and relationships between the parties, but rather on the finding of specific, scientific facts. Authenticity of the wine is an issue best left to the experts, and does not belong before this Court in the form of an action for declaratory judgment.

Finally, the case law is equally clear that the DJA was not intended for duplicative or essentially offensive claims, or claims that deal with actions that took place entirely in the past and seek no prospective relief.

### A.    THE DJA MAY NOT BE USED TO RESOLVE DISPUTES OF AN UNCLEAR OR PURELY SCIENTIFIC NATURE.

Plaintiff's DJA claim bursts the bounds of both the DJA and Article III of the Constitution. A district court may hear a DJA claim only where the plaintiff presents the court with an actual controversy. *See Clalit Health Servs. v. Israel Humanitarian Found.*, 385 F.

---

[defendants] pursuant to New York law, it is unnecessary for the Court to undertake a minimum contacts analysis.").

In addition, because, as discussed in Point III above, Plaintiff fails to state a valid fraud claim, and, moreover, because Plaintiff fails to allege sufficient facts to give rise to personal jurisdiction over Defendant, venue in this district is improper. *See* 28 U.S.C. § 1391.

Supp. 2d 392, 401-02 (S.D.N.Y. 2005) ("The Declaratory Judgment Act 'permits declaratory relief only in cases presenting actual controvers[ies], . . . a requirement that incorporates into the statute the case or controversy limitation on federal jurisdiction found in Article III of the Constitution.'" (citing *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996)). The DJA's "actual controversy" requirement dictates that the claims at issue be justiciable, *i.e.,* both ripe for adjudication and of the type a court may properly decide. *See, e.g., Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 631-32 (S.D.N.Y. 2003) ("A justiciable controversy is one between parties having adverse legal interests, of sufficient immediacy and reality, to warrant the issuance of a declaratory judgment." (internal quotation marks omitted)), *aff'd*, 355 F.3d 206 (2d Cir. 2004).

Because of the lack of clarity in Plaintiff's DJA claim (referring ambiguously to the "Rodenstock wine"), the claim is non-justiciable and should be dismissed. *See, e.g., Trans Pac. Leasing Corp., v. Aero Micronesia, Inc.*, 26 F. Supp. 2d 698, 712 (S.D.N.Y. 1998) (dismissing a claim for declaratory judgment with prejudice and stating that "[w]here, as here, the parties have failed adequately to present the issue to the Court, it would be inappropriate for the Court to set sail on an uncharted sea"). Above and beyond that, the requirements of justiciability dictate that this essentially scientific dispute does not properly belong before this Court. *See Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1049-50 (C.D. Cal. 1998) (dismissing a claim for declaratory judgment premised on resolution of a scientific dispute).

## B.    A DJA CLAIM MUST COMPORT WITH THE INTENDED PURPOSES OF THE DJA.

Even where a DJA plaintiff is able to meet the actual controversy threshold, however, a district court is not required to hear the resulting DJA claim. *See Dow Jones & Co., Inc. v. Harrods Ltd.*, 237 F. Supp. 2d 394, 431 (S.D.N.Y 2002) ("Even were the Court to find the

existence of an actual controversy or an appropriate invocation of the DJA, its inquiry would not necessarily end there."), *aff'd*, 346 F.3d 357 (2d Cir. 2003). Indeed, where an otherwise proper claim fails to comport with the intended purposes of the DJA, it is in the district court's sound discretion to dismiss the claim, especially where granting declaratory relief "would serve no useful purpose." *See id.* (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)); *see also Christopher P. v. Marcus*, 915 F.2d 794, 802 (2d Cir. 1990) ("The decision to grant declaratory relief rests in the sound discretion of the district court and will not be disturbed on appeal unless there is a showing that the court abused its discretion."); *Adler v. Pataki*, 204 F. Supp. 2d 384, 390 (N.D.N.Y. 2002) (acknowledging that remedies under the DJA are discretionary and stating that "[e]motional vindication is not enough to form a basis for awarding declaratory relief"). Here, Plaintiff's DJA claim does not serve any useful purpose as it seeks the same retrospective and coercive relief as his parallel fraud claim, and seeks the adjudication of facts entirely in the past. In addition, a DJA claim may not properly be used to provide an end-run around the statute of limitations. *See Town of Orangetown v. Gorsuch*, 718 F.2d 29, 42 (2d Cir. 1983) ("If . . . a claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time will govern."); *Connolly v. McCall*, No. 98 Civ. 2889, 2000 WL 375239, at *4 (S.D.N.Y. Apr. 12, 2000) (dismissing a DJA claim because it was being used as an end-run around plaintiff's expired coercive claim), *aff'd*, 254 F.3d 36 (2d Cir. 2001).

### 1.   The DJA Is Not Intended as a Parallel Avenue for Essentially Offensive, Coercive Suits.

It is clear from the applicable case law that the DJA is not intended to provide a plaintiff with an alternate or parallel avenue for an essentially offensive, coercive suit. In essence, the DJA provides a party who faces suit as a putative defendant an avenue by which that party can

seek a declaration of its rights without having to wait until the putative plaintiff brings suit. *See Dow Jones,* 237 F. Supp. 2d at 405 (outlining the purposes of the DJA). As this Court stated in *Dow Jones*, "[t]he DJA remedy was designed as a means to facilitate early and effective adjudication of disputes at a time when a controversy, though actual, may still be incipient, but before it expands into a larger conflict." *See id.* As such, the DJA is intended to provide relief in situations of uncertainty, where the DJA plaintiff faces possible liability as a result of ongoing activity:

> The action generally ***commences at the instance of a party facing potential liability*** to another who may have an accrued claim at that time but has not yet commenced coercive litigation to pursue relief. By enabling the parties to narrow the issues and differences and expedite resolution of their conflict, the DJA procedure helps to minimize the prolongation of disputes, reduce the risk of loss and avoid the unnecessary accumulation of damages.

*Id.* (emphasis added); *see also Gmurzynska*, 257 F. Supp. 2d at 631-32 ("There is no justiciable controversy unless the defendants are in a position to place plaintiff's rights in jeopardy, and the threat to those rights must be shown to have some basis." (internal quotation marks and brackets omitted)).

As a result, it is improper for a putative plaintiff to bring, under the guise of the DJA, a claim that the plaintiff could otherwise or actually does concurrently bring for coercive relief. *See CAMOFI Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 463, 480 (S.D.N.Y. 2006) (dismissing a defendant's counterclaim for declaratory judgment where the declaratory judgment counterclaim was duplicative of a breach of contract counterclaim, also asserted by defendant).

As is clear from the Complaint, Plaintiff's claims put him in the position of a plaintiff seeking affirmative, coercive relief, not a putative defendant facing future liability for ongoing conduct. Moreover, as was the case in *CAMOFI*, Plaintiff's DJA claim is duplicative of his claim for coercive relief and therefore does not comport with the intended purposes of the DJA.

*See CAMOFI*, 452 F. Supp. 2d at 480 (stating that such duplicative claims fail the primary purposes of the DJA, to wit, to "serve a useful purpose in clarifying and settling the legal relations at issue" and to "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding" (internal quotation marks omitted)).

Finally, as set forth in Point II above, Plaintiff's fraud claim is time barred, and Plaintiff should not be allowed to use his DJA claim as an end-run around the applicable statute of repose.

### 2. The DJA Is Not Intended for the Resolution of Disputes Based Entirely on Past Action.

In addition, as the DJA is focused on resolving uncertainty in relation to future conduct, it is inappropriate to bring a DJA action wholly on the basis of past actions. *See Diversified Carting, Inc. v. City of N.Y.*, No. 04 Civ. 9507(HB), 2006 WL 147584, at *11 (S.D.N.Y. Jan. 20, 2006) (granting summary judgment against a claim for declaratory judgment where that claim was based entirely on past conduct and plaintiff faced no future liability as a result of the facts at issue); *Ippolito v. Meisel*, 958 F. Supp. 155, 165 (S.D.N.Y. 1997) (dismissing plaintiff's claim for declaratory judgment because it sought to determine past facts only and not provide prospective relief).

Plaintiff's DJA claim is based entirely on actions that took place over 20 years ago. There is no uncertainty regarding Plaintiff's future actions, nor is Plaintiff in danger of being sued by Defendant on the basis of those actions. Although it is clear that Plaintiff feels he has been aggrieved, the case law is clear that a desire by Plaintiff to seek emotional vindication—however fervent that desire may be—is insufficient to ground a claim under the DJA. *See Adler*, 204 F. Supp. 2d at 390 (rejecting a claim for declaratory judgment where no case or controversy could be shown beyond plaintiff's pursuit of emotional vindication).

As a result, Plaintiff's DJA claims are clearly outside both the scope and intention of the DJA, and should be dismissed.

### C.     THE *ISUZU* CASE

At least one federal court interpreting the DJA's justiciability requirement has held that the DJA does not provide a forum for the resolution of scientific disputes. *See Isuzu Motors*, 12 F. Supp. 2d at 1049-50.   In *Isuzu*, an automobile manufacturer (Isuzu Motors Ltd.) sued a consumer advocacy group for defamation on the basis of the results of SUV-rollover tests conducted by the group. *See id.* at 1039.  In its DJA claim, Isuzu requested that the court declare that the results of the rollover test conducted by the consumer group were false. *See id.* at 1041-42, 1049-50.   The District Court for the Central District of California, however, dismissed Isuzu's claims as inappropriate for judicial determination. *See id.* at 1049-50.  In dismissing the DJA claim, the court stated that, "Plaintiff's claim for declaratory relief does not seek a declaration of rights and other legal relations.   Instead, plaintiff requests that the Court use the power granted by the Declaratory Judgment Act to ***resolve a scientific dispute*** regarding the safety of the Isuzu Trooper." *See id* (emphasis added)*.*

The *Isuzu* case is directly on point here.  Plaintiff seeks a declaration by this Court that one or more bottles of wine are inauthentic.  (Compl. ¶ 50.)  Authenticity of an old bottle of wine, however, is essentially a scientific question, involving, *inter alia*, scientific findings regarding chemical make-up of the wine, age of the bottle, authenticity of the engraving, and evidence in the historical record.  As was the case in *Isuzu*, Plaintiff here seeks, via the DJA, to have the Court step in as an expert in its own right and make a declaration not as to the rights of the parties, but rather as to the purely scientific question of whether or not the "Rodenstock

wine" (whatever that may be) is authentic.  As *Isuzu* makes clear, such a question is beyond the scope of the DJA and should therefore be dismissed.

Furthermore, to the extent that Plaintiff seeks a declaration as to the authenticity of the Thomas Jefferson Cache in general (not just the four bottles allegedly from that cache that Plaintiff allegedly purchased) or indeed, as the Plaintiff puts it, as to the "Rodenstock wine" (whatever that may be), any declaration by this Court as to the authenticity of that wine would affect the rights of entities and individuals not party to this action, *i.e.,* all others who have purchased bottles of wine from the Thomas Jefferson Cache or potentially all others who have ever purchased wine stemming from Defendant.  On that ground alone, Plaintiff's DJA claim should be dismissed. *See Robinson v. Comm'r of Jurors*, 419 F. Supp. 1189, 1191 (S.D.N.Y. 1976) (dismissing a DJA claim because all interested persons were not before the court).

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint in its entirety and grant Defendant any such other and further relief as it deems just and proper.

Dated: New York, New York
       January 19, 2007

ALSTON & BIRD LLP

By: 

Birgit Kurtz (BK-4220)
F. Paul Greene (FG-1837)
90 Park Avenue
New York, NY 10016
(212) 210-9400

*Attorneys for Defendant Hardy Rodenstock*

LEGAL02/30223873v9

- 28 -